**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.  4:25-CR-00594** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JERIAH MAST,** | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **Defendant.** | ) | |

This matter is now before the Court on Defendant Jeriah Mast's *Motion to Dismiss Indictment* (ECF #29), related to an *Indictment* (ECF #11) charging him with four counts of violating 18 U.S.C. § 2423(c) & (e) ("Attempted & Actual Engaging in Illicit Sexual Conduct in a Foreign Place").  Defendant Mast's motion asserts that the provisions of the statute, 18 U.S.C. § 2343, as applied to Mast's alleged conduct, exceeds Congress's authority under the United States Constitution because the sexual conduct for which he was charged involved "non-commercial" acts, thus rendering the statute unconstitutional as applied to him, and beyond the scope of congressional authority under either the Foreign Commerce Clause (U.S. CONST. art. I, § 8, cl. 3),[1] or the Necessary and Proper Clause (U.S. CONST. art. I, § 8, cl. 18).[2]  (*See* ECF #29,

---

[1] Section 8, clause 3 of article I provides:  "The Congress shall have the Power . . . To regulate Commerce with foreign Nations, ans among the several States, and with the Indian Tribes[.]"

[2] Section 8, clause 18 of article I provides:  "The Congress shall have the Power . . . To

*Motion to Dismiss Indictment*, pp. 1 & 3; ECF #33, *Government's Memorandum in Opposition to Defendant's Motion to Dismiss Indictment*, pp. 3-4).

The *Motion to Dismiss Indictment* is now fully briefed and ready to rule.  (*See* ECF #29 & ECF #33).[3]

Defendant Mast "acknowledges that a published Sixth Circuit case precludes this Court from ruling in his favor," and notes that "he files [his] motion to preserve the issue for further review by the Sixth Circuit and in the United States Supreme Court." (ECF #29, *Motion to Dismiss Indictment*, p. 1) (insert supplied).  That case, *United States v. Rife*, 33 F.4th 838, 846 (6th Cir.), *cert. denied*, 143 S. Ct. 356 (2022), upheld the non-commercial application of Section 2423(c), applied in a manner identical to that sought to be applied by the government in this case, as constitutional under the Necessary and Proper Clause, and supportable as a ground for indictment and potential conviction related to the sexual activity at issue in this case.  This Court follows, and applies, the controlling *Rife* decision here.

Accordingly, Defendant Mast's *Motion to Dismiss Indictment* (ECF #29) is DENIED.

---

make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." Application of the Necessary and Proper Clause in connection with regulation of extraterritorial conduct related to Treaties arises from Section 2, clause 2, of article II, which provides:  "The President . . . shall have Power, by and with the Advice and Consent of the Senate to make Treaties, provided two thirds of the Senators present concur[.]"  *See Bond v. United States*, 572 U.S. 844, 874-75 (2014) (as cited and quoted by *United States v. Rife*, 33 F.4th 838, 846 (6th Cir. 2022), the case which, as explained below, is controlling in this matter).

[3]

Defendant Mast did not file a *Reply Brief*, as the legal issues raised by the *Motion to Dismiss Indictment* were fully set forth in the initial motion and the government's response.

## I. FACTS AND PROCEDURAL HISTORY[4]

Defendant Jeriah Mast is from Millersburg, Ohio, and was raised as part of the Mennonite community.  Through his church, he became involved with an organization called Christian Aid Ministries, which is headquartered in Millersburg.  As part of his activities with Christian Aid Ministries, he repeatedly traveled between the United States and Haiti between 2002 and 2019 on a series of missionary trips.  During these trips with Christian Aid Ministries, Mast, by his own admission, sexually abused more than 30 Haitian children from the communities he was sent there to help.[5]

In October 2019, Mast pled guilty to two counts of gross sexual imposition in the Holmes County Court of Common Pleas, and was sentenced to nine years in state prison.  In February 2024, an Assistant United States Attorney for the Northern District of Ohio declined to accept Mast's case for prosecution, offering the reasoning that "in light of [the] 6th Circuit decision in U.S. v. Al-Maliki[, 787 F.3d 784 (6th Cir. 2015),] and the lack of evidence of a commercial sex act, combined with the fact that [Mast] is serving a significant sentence, [the U.S. Attorney's

---

[4]
     The facts of this case are not in dispute, and are recited here as drawn from the parties' briefing (ECF #29 & ECF #33) without citation to the portions of the record identified in each of the filings.

[5]
     In 2019, when Mast returned to Ohio from one of his mission trips, he confessed to his pastor about inappropriate contact with four minor children in Ohio.  Shortly thereafter, he voluntarily initiated an interview with law enforcement in Holmes County, Ohio (where Millersburg is located).  During the interview, he admitted his unlawful conduct with the four local minors, as well as sexual contact with the more than 30 minors living in Haiti while he was there on mission trips.  This interview was initially the subject of a *Motion to Suppress Statements* filed by Mast on June 5, 2026, and later fully briefed. (*See* ECF #31, ECF #32 & ECF #34).  On August 3, 2026, Mast moved to withdraw the *Motion to Suppress Statements*, (ECF #36), which motion was granted the following day, (ECF #37).

-3-

Office is] declining the case."

To place the facts related to the government's then-contemporary comment regarding the *United States. v. Al-Maliki* case into context both as to this recitation of facts and its later place in the Court's ruling in this case, a somewhat detailed explanation of that case is warranted here, rather than awaiting explanation in the following section on the controlling legal standards of the issues now before this Court.

In the *Al-Maliki* case, Defendant Malek al-Maliki had been convicted of violating 18 U.S.C. § 2423(c) (the same statute at issue here) based on the sexual abuse of his two minor children during visits with his estranged wife, who at the time lived with the two minor children in Morocco and Syria after the Defendant and his wife had long earlier been separated.  787 F.3d at 789-80.  After a jury trial, a jury found him guilty of "engaging and/or attempting to engage in illicit sexual conduct in a foreign place" with each of his two children, in violation of Section 2423(c).  *Id.* at 790.  While al-Maliki had not made an "unconstitutionality of the statute" argument as part of his Federal Rule of Criminal Procedure 29 motion for acquittal at trial, he argued for the first time on appeal that Section 2423(c) was unconstitutional because it exceeded Congress's authority under the Foreign Commerce Clause of the U.S. Constitution.  *Id.*  In making this argument, al-Maliki argued that the federal courts lack "jurisdiction" over the case, which then raised the question of "what kind of *jurisdiction* is at issue where . . . a litigant challenges Congress' authority to pass a criminal law."  *Id.* (emphasis in original).

On appeal, the Sixth Circuit first addressed the "jurisdictional" arguments raised by al-Maliki, and whether such arguments were either forfeited or waived, the resolution of which issue being determinative of whether the Sixth Circuit could address the issue at all, and if so,

what standard of review would apply:

> Now back to al-Maliki's challenge.  He agues that Congress exceeded its Foreign
> Commerce Clause authority when passing § 2423(c).  That goes not to our power
> but to Congress's, so it is not a challenge to subject-matter jurisdiction.  Al-Maliki
> can and did forfeit the challenge by failing to raise it below, but he did not waive
> it because he did not intentionally relinquish it.  *See United States v. Olano*, 507
> U.S. 725, 732-33, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).  We accordingly
> review this constitutional challenge for plain error under Rule 52(b).[6]
>
> Under plain-error review, al-Maliki must show "(1) error (2) that was obvious or
> clear, (3) that affected [his] substantial rights[,] and (4) that affected the fairness,
> integrity, or public reputation of the judicial proceedings." *United States v.
> Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).  Assuming al-Maliki can
> show an *obvious error* (a too-generous assumption, we shall see), we "should
> correct [it]" because it would affect a substantial right (liberty) and would
> "seriously affect[] the fairness, integrity or public reputation of judicial
> proceedings" (enforcing an "obvious[ly]" unconstitutional statute).  *Olano*, 507
> U.S. at 736.  So, the key questions are whether there was any error (is the statute
> unconstitutional?), and if so, whether that error was plain (is the statute
> "obvious[ly] or clear[ly]" unconstitutional).

787 F.3d at 791 (emphasis and inserts in original, footnote reference supplied).

   In addressing this issue, reviewed under a "plain error" standard of review, and engaging

in considerable discussion on the matter expressing doubt about whether Section 2423(c) was

supportable under the Foreign Commerce Clause, the Sixth Circuit held that Section 2423(c) was

"not *obviously* unconstitutional" under the Foreign Commerce Clause, and therefore upheld al-

Maliki's conviction:

> The Constitution authorizes Congress "[t]o regulate Commerce with foreign
> Nations." U.S. CONSTITUTION art. I, § 8, cl. 3.  Does that include the power to
> punish a citizen's noncommercial conduct while the citizen resides in a foreign
> nation?  We doubt it, but because of plain-error review, we need not finally decide
> today.  Any error was not plain, so we must affirm.

---

[6]

   Federal Rule of Criminal Procedure 52(b) provides:  "A plain error that effects substantial
rights may be considered even though it was not brought to the court's attention."

-5-

> We lean toward finding "error" in enforcing § 2423(c) against al-Maliki for his noncommercial conduct while residing in Syria, but we need not – and do not – decide the issue today.
>
> \* \* \* \* \*
>
> Congress, it therefore appears, lacked the power under the Foreign Commerce Clause to pass § 2423(c) as applied to noncommercial conduct.
>
> \* \* \* \* \*
>
> But we need not finally decide today. As explained in more detail below, because we conclude only that the statute is not *obviously* unconstitutional, al-Maliki's challenge flunks plain-review error review.

787 F.3d at 791-92, 793-94 (inserts and emphasis in original).

This discussion of the *Al-Maliki* case in this fact recitation is included here to point out that, at the time of the government's decision not to move forward with prosecution of Mast under Section 2423(c) in February 2024, it appears that it was not *precluded* under the Sixth Circuit's decision in *Al-Maliki* from doing so, but rather that, given the tenor of the Sixth Circuit's discussion in that case, it chose not to do so, at least not to proceed under the legal argument that the Foreign Commerce Clause supported the application of Section 2423(c) as applied to non-commercial sexual activity. The Sixth Circuit, in a later case (in fact, the primary case central to the ruling here), subsequently ruled as a matter of law (in effect, on *de novo* review rather than "plain error" review) that Section 2423(c) is not constitutionally supportable under the Foreign Commerce Clause. *United States v. Rife*, 33 F.4th 838, 845 (6th Cir. 2022):

> [T]he bare fact that an American "travels in foreign commerce" does not empower Congress to regulate, under the Foreign Commerce Clause, everything that American does afterward. That is the plain implication of the government's argument here: that, once an American citizen travels in foreign commerce, the federal government has a police power to regulate (or proscribe) *any* conduct that citizen might engage in overseas, from marrying a foreign national to consuming *foie gras*. Congress has no such power.

-6-

* * * * *

> In sum, Rife's conviction under 18 U.S.C. § 2423(c) for molesting his two victims in Cambodia, years after he traveled there, and without any commercial exchange, was not an exercise of Congress's power to "regulate Commerce with foreign Nations[.]"  His conviction cannot stand on that ground.

33 F.3d at 844-45 (emphasis in original).[7]

The government's earlier decision not to prosecute made no mention of whether the Necessary and Proper Clause might support such a prosecution under Section 2423(c).  That is the issue raised by Defendant Mast's instant motion, which will be addressed after completion of this recitation of the pertinent facts.

On November 4, 2025, Defendant Mast was charged by federal complaint with one count of Engaging in Illicit Sexual Conduct in Foreign Places, in violation of 18 U.S.C. § 2423(c).  (ECF #1, *Complaint*).

On December 2, 2025, a federal grand jury returned an indictment charging Defendant Mast with four counts of Attempted & Actual Engaging in Illicit Sexual Conduct in a Foreign Place, each in violation of the version of 18 U.S.C. § 2423(c) & (e) in effect at the time of the charged conduct.[8]  (ECF #11, *Indictment*).  Specifically, Count 1 charged that, "[i]n or about

---

[7]

Thus, the non-Sixth Circuit cases cited in the government's brief (from the 3rd, 4th, 9th, 10th, and D.C. Circuits), at least insofar as those courts upheld the application of Section 2423(c) as within Congress' power to regulate under the Foreign Commerce Clause (some of these courts upheld the statute as constitutional under both the Foreign Commerce Clause and the Necessary and Proper Clause) would appear likely inapplicable as to how the Sixth Circuit would rule in the Foreign Commerce Clause aspect, following its precedent in *Rife*.

[8]

Section 2423(c) addresses "actual" conduct, while Section 2423(e) addresses "attempted" conduct.  Count 1 is based on the statute in effect from April 30, 2003 to July 26, 2006, and Counts 2, 3, and 4 are based on the statute in effect from July 27, 2006 to March 6, 2013).  (ECF

2004," the defendant "did travel in foreign commerce from the United States to Haiti and engage in illicit sexual conduct, as defined in Title 18 U.S.C., section 2423(f), with Minor Victim 1, . . . and attempted to do so."  Count 2 charged that, "[i]n or about 2007," Defendant Mast acted similarly in connection "with Minor Victim 2."  Counts 3 and 4 charged that, "[i]n or about 2011," he acted similarly "with Minor Victim 3" and "with Minor Victim 4," respectively.

On May 26, 2026, Defendant Mast filed the instant *Motion to Dismiss Indictment*, (ECF #29), asserting that Section 2423(c) is "unconstitutional as applied to him" because the sex acts at issue were "non-commercial" and their criminalization thus "exceeds Congress's authority under the United States Constitution." (ECF #29, pp. 1, 3-4).  The motion "acknowledges that a published Sixth Circuit case [*United States v. Rife*, 33 F.4th 838 (6th Cir. 2022)] precludes this Court from ruling in his favor," and notes that "he files this motion to preserve the issue for further review by the Sixth Circuit and the United States Supreme Court." (ECF #29, pp. 1 & 3)

## II.  LEGAL STANDARDS AND ANALYSIS

Congress may only enact laws that it has the authority to enact under the Constitution. *United States v. Comstock*, 560 U.S. 126, 133 (2010).  Thus, Congress may only regulate extraterritorial conduct to the extent it has authority to do so under the Constitution.  *See United States v. Firestone Tire & Rubber Co.*, 518 F. Supp. 1021, 1032 (N.D. Ohio 1981) ("The power of Congress to presecribe rules governing the extraterritorial conduct of its nationals is circumscribed only by the safeguards of the United States Constitution").

There are two ways that Congress can regulate extraterritorial conduct using its

_____

#11, *Indictment*).

enumerated powers under the Constitution.  One avenue is through the Foreign Commerce Clause, U.S. CONST. art. I, § 8, cl. 3.  The other avenue is through the Necessary and Proper Clause, which relates to implementing treaties, U.S. CONST. art I, § 8, cl. 18.  *See United States v. Rife*, 33 F.4th 838, 846 (6th Cir. 2022) (citing *Bond v. United States*, 572 U.S. 844, 874-75 (2014)) (Scalia, J., concurring in the judgment) ("Read together, the two Clauses [art. I, § 8, cl. 18, and art. II, § 2, cl. 2] empower Congress to pass laws 'necessary and proper for carrying into Execution . . . [the] Power . . . to make Treaties'").

In *Rife*, the Sixth Circuit held that Section 2423(c), including its application to "noncommercial sex offenses against children" in a foreign country, is a constitutional exercise of "Congress's power to enact legislation implementing treaties" – and specifically the "Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography."[9]  33 F.3d at 848 (Kethledge, J., joined by Bush, J; Stranch, J., concurring in the judgment).  The Sixth Circuit's decision in *Rife* found that the statute derived its authority from the Necessary and Proper Clause, because it was not "so unrelated" to the provisions of a United Nations treaty (the *Optional Protocol*) to put it beyond the power of the Necessary and Proper Clause, as presently interpreted under what it determined was controlling Supreme Court precedent in the case of *Missouri v. Holland*, 252 U.S. 416 (1920).  The Sixth Circuit decision in *Rife*, while upholding Section 2423(c) as a valid exercise of the Necessary and Proper Clause, notes its concern over the essentially unlimited breadth of the application of the Necessary and Proper Clause described in the *Missouri v. Holland* decision, but found that its

---

[9]

 *Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution, and Child Pornography*, United Nations, New York (2171, A-27531 U.N.T.S. 247-54).

holding compelled a ruling that Section 2423(c) represented a constitutional exercise of that Clause. Given that the *Rife* decision is central to this Court's ruling, extended quotation of the key points of its analysis of the issue is warranted:

> [T]he question [is] whether we can uphold Rife's conviction as an exercise of Congress's power to enact legislation implementing a treaty. * * * That question is whether the President and two-thirds of the Senate, by the sole fact of their consent to a treaty, can empower Congress to enact legislation that it otherwise could not enact by the exercise of its enumerated powers in Article I. The implications of that question are "seismic[,]" because the prevailing view appears to be that "the Treaty Clause comes with no implied subject-matter limitations." *Bond*, 572 U.S. at 877 (Scalia., concurring in the judgment). For if the Treaty Power has no subject-matter limitations, Congress's power to enact laws that implement treaties would not have any subject matter limitations either. . . . The Necessary and Proper Clause would become a portal, through which Congress would leave behind its limited powers and exercise, at last, an unlimited one. For example, a treaty addressing climate change – or an international convention for the prevention of infectious diseases – might empower Congress to regulate virtually any conduct it chose. Congress would be "one treaty away from acquiring a general police power." *Id.* at 879.
>
> The question, differently stated, is whether one organ of government can expand the powers of another, notwithstanding the fundamental law's manifest object to constrain them both. The Founding generation was acutely familiar with that kind of question.

    33 F.3d at 846.
*Rife*,

The *Rife* decision followed this introduction with an extended historical discussion of the history of "the struggle to limit governmental power," beginning with the Magna Carta and continuing on through to the American Revolution. 33 F.3d at 846-47. The decision then continues:

> In light of this history, the idea that the Founding generation would have included in the Constitution – as part of an ancillary power of Article I, no less – a hidden power to "overleap the bounds" of all the other powers in that Article, and to legislate "in all cases whatsoever," is simply implausible. . . . Yet, the government asks us to recognize such a power here. That the conduct at issue in the case occurred overseas is merely a

-10-

fortuity: the principle it advocates would enable Congress, with the right treaty, to regulate any conduct it chooses domestically. And that Rife's conduct deserves severe punishment does not allow us to authorize it contrary to law.

But, as to Congress's power to implement treaties – unlike its power to regulate commerce with foreign nations – we do not write on a relatively clean slate. In *Missouri v. Holland*, 252 U.S. 416, 40 S. Ct. 382, 64 L. Ed. 641, 18 Ohio L. Rep. 61 (1920), the Supreme Court considered the constitutionality of the Migratory Bird Act of 1918. That statute, like the one here (as applied to Rife at least), appeared not to have been authorized by any of Congress's enumerated powers under Article I. But the 1918 Act was passed to implement a recent treaty of the same name. The Court held, in a sentence regarded since as *ipse dixit*: "If the treaty is valid there can be no dispute about the validity of the statute under Article I, Section 8, as a necessary and proper means to execute the powers of the Government." *Id.* at 432.

**That holding binds us here. The Optional Protocol is undisputably a valid treaty; and we cannot say that § 2423(c) as applied to noncommercial sex offenses against children is so unrelated to the treaty's provisions as to put the case beyond the Court's holding in *Holland*. See *United States v. Comstock*, 560 U.S. 126, 134, 130 S. Ct. 1949, 176 L. Ed. 2d 878 (2010). Based on *Holland* alone, therefore, we uphold Rife's conviction.**

33 F.3d at 848 (emphasis on the court's holding supplied).

Based on this controlling Sixth Circuit precedent (and, as Defendant Mast admits), this Court must deny his *Motion to Dismiss Indictment* (ECF #29). *See, e.g., United States v. Gibson*, No. 3:23-CR-00329, 2024 WL 1619604, at *1 (N.D. Ohio Apr. 15, 2024) ("District courts are bound by a published opinion of the Sixth Circuit 'unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision.'") (alteration in original) (quoting *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023)). The Sixth Circuit has not overruled *Rife*, nor has the Supreme Court issued a decision inconsistent with it.

-11-

## III. CONCLUSION

Accordingly, for the reasons set forth above, Defendant Mast's *Motion to Dismiss Indictment* (ECF #29) is DENIED.

IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge


DATED: _August 6, 2026_